UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X
                                                             :
CORTLANDT STREET RECOVERY CORP. and                          :
SPQR CAPITAL (CAYMAN) LTD.,                                  :
                                                             :        14-CV-01568 (JPO)
                                Plaintiffs,                  :
                                                             :        OPINION AND ORDER
                   -v-                                       :
                                                             :
DEUTSCHE BANK AG, LONDON BRANCH,                             :
                                                             :
                                Defendant.                   :
------------------------------------------------------------ X
```

J. PAUL OETKEN, District Judge:

Plaintiffs, Cortlandt Street Recovery Corp. ("Cortlandt") and SPQR Capital (Cayman)

Ltd. ("SPQR"),[1] bring suit against Deutsche Bank AG, London Branch ("DBAG"), alleging

various causes of action arising from transactions involving subordinated notes issued by Hellas

Telecommunications II, SCA, which is not a party to this suit.  Defendant moves to dismiss the

Amended Complaint under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil

Procedure.  (Dkt. No. 29.)  For the reasons that follow, DBAG's motion to dismiss the Amended

Complaint under Rule 12(b)(2) is granted.

I.      **Background**[2]

Cortlandt is a New York corporation.  (Dkt. No. 27, Amended Complaint ¶¶ 4–5 ("Am.

Compl.").)  SPQR is a limited company registered in the Cayman Islands.  (*Id.* ¶ 6.)  Prior to

---

[1] On September 12, 2014, the Court ruled that SPQR had no remaining stake in this action.  (Dkt.
No. 21.)  Thus, although Plaintiffs' Amended Complaint does not drop SPQR as a party, the
Court refers only to Cortlandt because it is the real party in interest.  *See Cortlandt St. Recovery
Corp. v. Deutsche Bank AG, London Branch*, No. 14-CV-1568 (JPO), 2014 WL 4494131, at *2.

[2] All facts in this section are as alleged in the Complaint unless otherwise noted.

bringing this suit, SPQR assigned its interests in subordinated notes issued by Hellas Telecommunications II, SCA ("Hellas II"), part of a large Greek telecom concern, to Cortlandt. (*Id.* ¶¶ 5–6.)  DBAG is an unincorporated branch office of Deutsche Bank *Aktiengesellschaft*, a German corporation.  (*See* Dkt. No. 31, Ex. G. ¶¶ 2–3.)

Beginning in 2006, Hellas II issued a series of notes that, according to the Complaint, were part of a large-scale financial fraud.  The "[s]ubordinated [n]otes" that form the basis of this action were issued by Hellas II through an indenture agreement dated December 21, 2006.  (Am. Compl. ¶ 10.)  Under the indenture, DBAG served as security agent.  (*Id.* ¶ 58.)  "The registered owners of the [g]lobal [n]otes [were] . . . clearing systems, Euroclear and Clearstream, in which investment banks and brokers are members.  The members of Euroclear and Clearstream are called Participants and they sold the Book Entry Interests to investors," including SPQR.  (*Id.* ¶ 10.)

The subordinated notes were sold through an offering memorandum published by Hellas II and the underwriters of the subordinated notes, (*id.* ¶ 52), and were guaranteed by Hellas Telecommunications I, *S.à.r.l.* ("Hellas I"), which pledged as collateral various instruments, including preferred equity certificates ("PECs") and convertible preferred equity certificates ("CPECs").  (*Id.* ¶¶ 49–55.)  After selling the first set of PECs and CPECS, however, Hellas II allegedly then issued additional PECs and CPECs that it did not disclose in the offering memorandum.  (*Id.* ¶ 61.)  Through a series of transactions on December 21, 2006, the details of which are not directly relevant here, Hellas II used the money raised from offering the subordinated notes to pay Hellas I, which then paid its sole shareholder, Hellas Telecommunications, *S.à.r.l.* ("Hellas").  (*Id.* ¶¶ 61–62.)  Hellas then paid its undisclosed shareholders, who in turn paid private equity funds and other firms, including DBAG.  (*Id.* ¶ 62.)

DBAG allegedly received at least $25,000,000 as a result of this transaction.  (*Id.*)  A listing memorandum published on January 11, 2007, did not disclose the transaction, which occurred on December 21, 2006.  (*Id.* ¶¶ 65–66.)  As a result of these transactions, the notes became essentially worthless upon Hellas's default.  DBAG and others received huge payments.  The holders of book entry interests in the subordinated notes received nothing.

SPQR held €60,000,000 worth of book entry interests in the subordinated notes.  (*Id.* ¶ 6.)  Prior to the commencement of this action, SPQR transferred "all right, title, and interest to collect principal and interest due" on the notes to Cortlandt.  (*Id.* ¶ 5.)  Cortlandt claims to have the "right to collect" the €60,000,000, along with an additional €23,120,000, presumably from other interests.  (*See id.* ¶ 4.)  Cortlandt brings this suit against DBAG as security agent under the indenture, alleging that DBAG breached its duties as security agent, giving rise to liability on a number of theories under state law, including intentional fraudulent conveyance (*id.* ¶¶ 68–74), constructive fraudulent conveyance (*id.* ¶¶ 75–81), breach of contract (*id.* ¶¶ 82–85), constructive trust (*id.* ¶¶ 86–88), breach of fiduciary duty (*id.* ¶¶ 89–96), and misappropriation of assets (*id.* ¶¶ 97–99).

## II.    Discussion

DBAG moves to dismiss the First Amended Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, failure to state a claim upon which relief can be granted, and under the doctrine of forum non conveniens.  Because the Court concludes that it lacks personal jurisdiction over DBAG, it need not, and does not, reach the other grounds for dismissal.

A.     **Legal Standard**

"[T]he plaintiff bears the burden of establishing personal jurisdiction." *MacDermid, Inc.*

*v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (quoting *Seetransport Wiking Trader*

*Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989

F.2d 572, 580 (2d Cir. 1993)).  Where, as here, a court determines personal jurisdiction without a

hearing, the plaintiff must make a prima facie showing of jurisdiction over the defendants.  *Id.*

"A prima facie case for personal jurisdiction must satisfy three elements: (1) proper service of

process upon the defendant; (2) a statutory basis for personal jurisdiction; and (3) accordance

with constitutional due process principles."  *Reich v. Lopez*, 38 F. Supp. 3d 436, 454 (S.D.N.Y.

2014) (Oetken, J.) (citations and internal quotation marks omitted).  "This showing may be made

through the plaintiff's own affidavits and supporting materials, containing an averment of facts

that, if credited, would suffice to establish jurisdiction over the defendant."  *S. N. Eng. Telephone*

*Co. v. Global NAPs, Inc.* 624 F.3d 123, 138 (2d Cir. 2010) (citation and internal quotation marks

omitted).  But the Court need not "accept as true a legal conclusion couched as a factual

allegation," *Jazini v. Nissan Motor Co.*, 148 F.3d 181, 185 (2d Cir. 1998) (quoting *Papasan* v.

*Allain*, 478 U.S. 265, 286 (1986)), nor need it accept as true allegations controverted by the

defendant's affidavits, *MacDermid*, 702 F.3d at 727.

A court may exercise either general or specific personal jurisdiction.  *Daimler AG v.*

*Bauman*, 134 S. Ct. 746, 754 (2014).  General jurisdiction renders a defendant amenable to suit

on all claims.  *Id.*  Specific jurisdiction renders a defendant amenable to suit only on those claims

that arise from conduct related to the forum.  *Id.*  Plaintiffs here allege that the Court has both

general and specific jurisdiction over DBAG.

In a diversity case, "the breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located." *Reich*, 38 F. Supp. 3d at 454 (quoting *Thomas v. Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006)) (alterations omitted). Accordingly, the Court looks first to the laws of the State of New York, and then to whether the exercise of jurisdiction comports with due process. *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (quoting *Bensusan Rest. Corp. v. King*, 126 F.3d 25, 27 (2d Cir. 1997)).

**B.**      **General Jurisdiction**

Under New York law, "a foreign corporation is subject to general personal jurisdiction in New York if it is 'doing business' in the state." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000) (citations and internal quotation marks omitted). Such a corporation "is 'doing business' . . . in New York . . . with respect to any cause of action . . . if it does business in New York not occasionally or casually, but with a fair measure of permanence and continuity." *Id.* (citations and internal quotation marks omitted).

Although such a showing is sufficient under New York law, the Court also must consider whether exercising personal jurisdiction would comport with the due process constraints imposed by the Fourteenth Amendment. *Daimler*, 134 S. Ct. at 751. It is uncertain if New York's "doing business" jurisdiction remains viable in light of *Daimler*. *Reich*, 38 F. Supp. 3d at 454–55 (collecting cases); *see also Sonera Holding B.V. v. Cukurova Holding A.S.*, 750 F.3d 221, 224 n.2 (2d Cir. 2014). "[T]he inquiry [under the Due Process Clause] . . . is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum state.'" *Daimler*, 134 S. Ct. at 761 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)) (last

alteration in original).  For a corporation, the place of incorporation and the principal place of business are the two "paradigm . . . bases for general jurisdiction" because they are both unique and easily ascertained.  *Id.* at 760 (quoting Lea Brilmayer, et al., *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 735 (1988)).  These qualities not only "afford plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims," *id.*, but also protect the liberty interests of defendants, providing them with "fair warning" that they are subject to a sovereign's jurisdiction, thereby allowing "potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (citations and internal quotation marks omitted).[3]  Thus, "general jurisdiction extends beyond an entity's state of incorporation and principal place of business only in the exceptional case where its contacts with another forum are so substantial as to render it 'at home' in that state." *Sonera Holding B.V.*, 750 F.3d at 223; *see also Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952).  There are very limited circumstances that render a corporation "at home" in a forum outside of its place of incorporation and principal place of business.  *See Daimler*, 134 S. Ct. at 755–58.

Deutsche Bank AG is a corporation organized under the laws of Germany.  (Am. Compl. ¶ 17; Dkt. No. 31, Decl. of Frederick W. Vaughan ("Vaughan Decl."), Ex. G.)  The corporation's activities are supervised from Frankfurt, Germany, where it holds its annual shareholder meeting. (Vaughan Decl., Ex. G.)  It maintains several unincorporated branch offices—including one in London, referred to as Deutsche Bank AG, London Branch ("DBAG")—which have no

---

[3] The Supreme Court's discussion of "transnational context" suggests that the clear and certain forum need not be an American forum, especially given considerations of "international rapport."  *See Daimler*, 134 S. Ct. at 762–63.

corporate existence separate and apart from Deutsche Bank AG.  (*Id.* ¶ 3.)  The company's

accounting is maintained in euros.  (Vaughan Decl., Ex. H.)

Cortlandt nonetheless argues that the Court has general jurisdiction because Deutsche

Bank AG conducts significant operations out of a Regional Head Office in New York City.

(Am. Compl. ¶ 27.)  In support of its argument, Cortlandt relies on the decision of the

Bankruptcy Court for the Southern District of New York in *Hosking v. TPG Capital*

*Management, L.P. (In re Hellas Telecommunications (Luxembourg) II, SCA)*, 524 B.R. 488

(Bankr. S.D.N.Y. 2015).  (Dkt. No. 37, Plaintiffs' Memorandum of Law in Opposition to

Defendant's Motion to Dismiss, at 4–5 ("Plaintiffs' Memorandum").)  In that case, the

bankruptcy court relied on allegations that the Deutsche Bank North American Regional Head

Office "serves as a critical hub of [Deutsche Bank AG's] core banking operations," to conclude

that Deutsche Bank AG's "presence in the *U.S.* [was] . . . more than merely transitory, but rather

'so continuous and systematic as to render [it] essentially at home' [in the United States]."  *Id.* at

508 (citations omitted) (emphasis added).  But the bankruptcy court exercised federal jurisdiction

under a statute authorizing *nationwide* service of process, and thus analyzed Deutsche Bank

AG's "contacts with the U.S. as a whole, rather than with New York specifically."  *Id.* at 506–

07; *see also Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex)*, 124 F.3d 619, 630 (4th Cir.

1997) (holding that, in a bankruptcy action, "the sovereign exercising authority is the United

States, not the individual state where the federal court is sitting").  The fact that DBAG might be

"at home" in the United States—a conclusion that the Court need not, and does not, make here—

is insufficient to render it "at home" in New York.

DBAG is incorporated under the laws of Germany and has its principal place of business

in Frankfurt, Germany.  DBAG is not "at home" in New York, and exercising general

jurisdiction would not comport with the requirements of due process.  *See Daimler*, 134 S. Ct. at 762 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."); *In re: LIBOR-Based Fin. Instruments Antitrust Litig.,* No. 11 MDL 2262 NRB, 2015 WL 4634541, *21 (S.D.N.Y. Aug. 4, 2015) (holding that DBAG's operations in NY are not so extensive as to render it 'at home' and subject to general jurisdiction there.)[4]

## C. Specific Jurisdiction

Specific jurisdiction requires a connection between the forum and the underlying controversy, most often "activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation."  *Goodyear*, 131 S. Ct. at 2851.  "In diversity cases, federal courts must look [first] to the forum state's long-arm statute to determine if personal jurisdiction may be obtained over a nonresident defendant."  *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990).  Although Cortlandt does not reference it either in the Amended Complaint or in its opposition brief, New York's long-arm statute allows a court to exercise personal jurisdiction over a non-domiciliary for a cause of action that arises when a non-domiciliary:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>
>> (i) regularly does or solicits business, or engages in any other persistent course of conduct, or

---

[4] To the extent that Cortlandt also argues the contacts of DBAG's U.S. subsidiaries, Deutsche Bank Trust Company Americas and Deutsche Bank Securities, Inc., should be imputed to DBAG, that argument is foreclosed by *Daimler*.

> derives substantial revenue from goods used or consumed or services rendered, in the state, or
>
> (ii)    expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>
> 4. owns, uses or possesses any real property situated within the state.

N.Y. C.P.L.R. 302(a).

Cortlandt alleges (1) that DBAG published an offering memorandum for subordinated notes denominated in both dollars and euros (Am. Compl. ¶ 43); (2) that DBAG distributed the offering memorandum to potential investors in New York (Am. Compl. ¶ 44); (3) that investors from New York provided money to DBAG to purchase subordinated notes (*see* Am. Compl. ¶ 45); and (4) that DBAG signed a New York forum-selection clause (Am. Compl. ¶ 25).

The transaction or occurrence that forms the basis of the Complaint occurred wholly outside of New York and outside of the United States, (Vaughan Decl., ¶ 10; *id.*, Ex. I; *see also* Am. Compl. ¶¶ 47–67), and the Complaint contains no allegations that the specific subordinated notes at issue ever had any contact with New York.  The Offering Memorandum contemplates that investors will not be located in the United States and presents the transactions in euros, the official currency of Greece and Luxembourg.  (*See, e.g.*, Vaughan Decl., Ex. A at X ("The financial statements are presented in euro, the official currency of the Hellenic Republic (Greece) and the Grand Duchy of Luxembourg."); *id.* at 2 ("This offering is available only to investors who are either [Qualified Institutional Buyers] or . . . non-U.S. persons outside of the United States.").)  And although some of the offering was denominated in dollars, Cortlandt brings claims only on the notes denominated in euros.  (Am. Compl. ¶¶ 4, 50; *see* Dkt. No. 40,

Defendant's Reply Memorandum, at 4 ("Plaintiffs' claims arise from the euro-denominated Subordinated Notes only; none of the notes on which Plaintiffs sue were offered in the United States.") (citation omitted).)  All transfers relating to the transactions occurred between foreign accounts.  The harm alleged has no connection to New York or to the United States, except that a foreign citizen assigned all rights to its claims to Cortlandt, a New York company, several years after the conduct that forms the basis of the Complaint.  (Am. Compl. ¶ 3.)  But the relationship necessary to support the exercise of personal jurisdiction "must arise out of contacts that 'the defendant *himself*' creates with the forum State," *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (quoting *Burger King Corp.*, 471 U.S. at 475 (emphasis in original)).  It could not have been foreseeable to DBAG that there would be an effect in New York.

In its brief, Cortlandt concedes that it was not DBAG, but Deutsche Bank Securities, Inc., that offered and sold dollar-denominated subordinated notes in New York.  (Plaintiffs' Memorandum, at 11.)  Cortlandt, though, also alleges that Deutsche Bank Securities, Inc. ("DBSI") is an "indirect wholly owned subsidiary of Deutsche Bank," (Am. Compl. ¶ 41), and that, based on this allegation, an agency relationship exists between DBSI and DBAG such that the actions of DBSI should be imputed to DBAG.  (Plaintiffs' Memorandum, at 11.)  Under New York law, a parent corporation may be subject to specific jurisdiction based on the actions of its subsidiary when the subsidiary acts as an agent of the parent.  *See Jazini*, 148 F.3d at 184 (citing *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996)).  "To establish that a subsidiary is an agent of the parent, the plaintiff must show that the subsidiary does all the business which the parent corporation could do were it here by its own officials."  *Id.* (internal quotations and alterations omitted).  Given this standard, Cortlandt's allegation that DBSI is a wholly owned subsidiary is insufficient to show that DBSI does all the business DBAG could do.

Indeed, Cortlandt's allegation that DBAG maintains an unincorporated branch office that *itself* does extensive business in New York further weakens its argument.  (*See* Am. Compl. ¶¶ 31–34.)

Regardless, even if DBSI's contacts were imputed to DBAG, the fact that DBAG or DBSI sold *other* subordinated notes in New York to *other* investors cannot alone support specific jurisdiction over DBAG with respect to the subordinated notes at issue here.  *See Walden*, 134 S. Ct. 1121–23.  Cortlandt's allegations pertain solely to euro-denominated subordinated notes (*see, e.g.*, Am. Compl. ¶¶ 4–9); it has not pleaded that the sale of subordinated notes by DBAG or DBSI, whether denominated in euros or dollars, at all relates to the claims it brings as assignee for holders of euro-denominated notes.  Most importantly, it has not alleged that any assignor in this case purchased the notes directly from DBAG or DBSI; instead, it expressly alleges only that the claims involve euro-denominated subordinated notes.  (*See* Am. Compl. ¶¶ 43–46.)  The sale of dollar-denominated notes to some investors in New York by DBAG or DBSI cannot support specific jurisdiction over DBAG with regard to the euro-denominated subordinated notes, which were not sold in New York, that are at issue in this action.  *See Walden*, 134 S. Ct. at 1122 ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").

In this case, Cortlandt has not alleged any facts that, if accepted as true, would subject DBAG to specific jurisdiction under the long-arm statute.  Therefore, the Court need not consider whether such an exercise of jurisdiction would be constitutional.

Plaintiffs finally allege that DBAG agreed to submit to jurisdiction in New York under New York Gen. Oblig. Law § 5-1402.  Section 5-1402 provides personal jurisdiction over a foreign corporation for actions or proceedings arising out of or relating to a contract that elects

New York law, involves a transaction of at least one million dollars, and "contains a provision or provisions whereby such foreign corporation or non-resident agrees to submit to the jurisdiction of the courts of this state."  N.Y. Gen. Oblig. Law § 5-1402(1).

Section 14.08 of the Indenture provides that the law of New York shall govern the Indenture.  (Am. Compl., Ex. A, Dkt. No. 27.)  And the transaction clearly exceeds one million dollars.  But the forum selection clause in the contract is signed only by the "*Issuer*," Hellas Telecommunications (Luxembourg) II.  (*Id.* § 14.09 (emphasis added).)  Specifically, section 14.09 of the Indenture provides that:

> The *Issuer* irrevocably (i) agrees that any legal suit, action or proceeding against the Issuer or any Guarantor arising out of, based on, or relating to the Notes, this Indenture or the transactions contemplated hereby may be instituted in any U.S. Federal or state court in the Borough of Manhattan in The City of New York and (ii) waives, to the fullest extent it may effectively do so, any objection which it may now or hereafter have to the laying of venue of any such proceeding.

(*Id.* (emphasis added).)  DBAG is not the issuer, and by its own terms, the consent to jurisdiction applies only to the issuer, Hellas Telecommunications (Luxembourg) II, and to the "*Guarantor*." (*See id.* § 1.04 ("Unless the context otherwise requires: (1) a term has the meaning assigned to it . . . .") (emphasis added).)  The Indenture does not name a specific entity as "*Guarantor*," but instead provides a general definition.  (*See id.* § 1.01 (emphasis added).)  DBAG signed only "as Security Agent," (*id.* at 112), and the Indenture explicitly distinguishes between the Issuer and the Security Agent, (*see, e.g.*, *id.* § 11.07) and between the Guarantor and the Security Agent, (*id.* §§ 11.01(d), 11.07).  There is no plausible reading of the Indenture in which the consent to jurisdiction extends so far as to bind the security agent, DBAG.  Because DBAG did not consent to the jurisdiction of the New York state courts, this Court does not have personal jurisdiction under N.Y. Gen. Oblig. Law § 5-1402.

###### E.    Defendant's Remaining Arguments

Because the Court concludes that it does not have personal jurisdiction over DBAG, it need not reach the remaining arguments in favor of dismissal, including the novel issue of whether the voluntary withdrawal of an appeal constitutes a "voluntary discontinuance" within the meaning of N.Y. C.P.L.R. § 205(a). *See Lorely Financing (Jersey) No. 3, Ltd. v. Morgan Stanley & Co., Inc.*, No. 651633/14, 2014 WL 5038397, at *2 (N.Y. Sup. Ct., N.Y. Co. Oct. 1, 2014).

## III.   Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(2) is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Docket Number 29 and to close this case.

SO ORDERED.

Dated:  August 28, 2015
        New York, New York

_____
                J. PAUL OETKEN
            United States District Judge

13